**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**JONATHAN W.,**

    **Plaintiff,**

**vs.**                                                                   **CIVIL ACTION NO. 2:23-CV-00315**

**KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

**<u>PROPOSED FINDINGS AND RECOMMENDATION</u>**

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered April 10, 2023 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in support of his complaint, and the Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 8, 9)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request for remand (ECF No. 8); **GRANT** the Defendant's request to affirm the decision of the Commissioner (ECF No. 9); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

1

**Procedural History**

The Plaintiff protectively filed his applications for DIB and SSI on June 16, 2020 alleging his disability began on June 15, 2020 due to arthritis in his lower back and knees, hearing loss, sleep apnea, back pain, numbness in his legs, difficulty standing, stomach pain, anxiety as well as social anxiety, high blood pressure, and being borderline diabetic. (Tr. at 21, 269) His claims were initially denied on December 3, 2020 and upon reconsideration on May 7, 2021 (Tr. at 21, 117-121, 122-126, 135-139, 140-142). Thereafter, the Plaintiff filed a written request for hearing on May 20, 2021. (Tr. at 143-144)

An administrative hearing was held on May 17, 2022 before the Honorable Francine A. Serafin, Administrative Law Judge ("ALJ"). (Tr. at 44-62) On July 25, 2022, the ALJ entered an unfavorable decision. (Tr. at 18-42) On August 11, 2022, the Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. at 211-213) The ALJ's decision became the final decision of the Commissioner on February 14, 2023 when the Appeals Council denied the Plaintiff's Request for Review. (Tr. at 1-7)

On April 7, 2023, the Plaintiff brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant, (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 7) Subsequently, the Plaintiff filed a Brief in support of his complaint (ECF No. 8); in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 9) Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 46 years old as of the alleged onset date, and considered a "younger

person" during the underlying proceedings. See 20 C.F.R. §§ 404.1563(c), 416.963(c). (Tr. at 35) He is a high school graduate, and has past relevant work as a material handler and steel fabricator, characterized as semi-skilled and skilled, respectively, but both defined as heavy in exertion level. (Tr. at 270, 56)

## **Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether the claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the

Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. <u>Id</u>. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Sections 404.1520a(c) and 416.920a(c):

(c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of

4

Impairments in appendix 1 to this subpart for more information about the factors
we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the
degree of your functional limitation: Understand, remember, or apply information;
interact with others; concentrate, persist, or maintain pace; and adapt or manage
oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.

(4) When we rate the degree of limitation in the first three functional areas
(understand, remember, or apply information; interact with others; concentrate,
persist, or maintain pace; and adapt or manage oneself), we will use the following
five-point scale: None, mild, moderate, marked, and extreme. The last point on the
scale represents a degree of limitation that is incompatible with the ability to do any
gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s),
the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the
impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the
claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the
medical findings about the severe impairment(s) and the rating and degree and functional
limitation to the criteria of the appropriate listed mental disorder to determine if the severe
impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2),
416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither
meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional
capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specify how the findings
and conclusion reached in applying the technique must be documented at the ALJ and Appeals
Council levels as follows:

At the administrative law judge hearing and the Appeals Council levels, the written
decision must incorporate the pertinent findings and conclusions based on the

technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that the Plaintiff met the insured status requirements through December 31, 2025. (Tr. at 25, Finding No. 1) Next, the ALJ determined the Plaintiff satisfied the first step of the sequential evaluation process because he had not engaged in substantial gainful activity since the alleged onset date of June 15, 2020. (Id., Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff had the following severe impairments: obesity; degenerative disc disease; spinal stenosis; osteophytosis; osteoarthritis; diabetes mellitus; radiculopathy; arthralgia; chronic pain syndrome; calcaneal spur; calcaneal enthesopathy; depression; and anxiety. (Id., Finding No. 3) At the third inquiry, the ALJ concluded the Plaintiff's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 26, Finding No. 4)

The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform light work except

> he can never climb ladders, ropes, or scaffolds; he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He can tolerate no more than occasional exposure to extreme cold, extreme heat, atmospheric conditions as that term is defined in the Selected Characteristics of Occupations (SCO), and workplace hazards such as unprotected heights and moving machinery. Additionally, he can tolerate interaction with the general public.

(Tr. at 30, Finding No. 5)

6

At step four, the ALJ found the Plaintiff was incapable of performing his past relevant work. (Tr. at 34, Finding No. 6) At the fifth step, the ALJ determined that in addition to the immateriality of the transferability of job skills, the Plaintiff's age, education, work experience, and RFC indicated that there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. at 35, Finding Nos. 7-10) Finally, the ALJ determined the Plaintiff had not been under a disability from June 15, 2020 through the date of the decision. (Tr. at 36, Finding No. 11)

## The Plaintiff's Challenges to the Commissioner's Decision

The Plaintiff alleges the ALJ improperly evaluated his treating P.A.'s opinion, despite providing greater limitations than found by the ALJ, which met his burden of proof that the Plaintiff is disabled. (ECF No. 8 at 3-6) This error resulted in a flawed RFC finding – since the ALJ rejected the alternating sit/stand limitation endorsed by the Plaintiff's P.A., this also resulted in an improper hypothetical to the vocational expert, and remand is the only cure for this error. (Id. at 6-7) Additionally, the ALJ provided an inadequate analysis or reasoning for devaluing the Plaintiff's P.A.'s opinion; the Plaintiff notes numerous medical records supported her opinion that the ALJ did not discuss, thus impeding meaningful review. (Id. at 8-11) The Plaintiff also contends that the ALJ failed to perform an adequate "credibility" assessment because she did not consider the Plaintiff's "exemplary work history"; this is another error that warrants remand. (Id. at 12-13)

In response, the Commissioner first points out that his case has important characteristics that distinguish it from the Dowling case: the ALJ herein did cite the proper regulatory authorities governing RFC evaluation; the ALJ did not conflate the Plaintiff's subjective complaints with the RFC assessment; and the ALJ properly considered all of the Plaintiff's impairments, including

those which were not severe when formulating the Plaintiff's RFC. (ECF No. 9 at 7-9) Further, the Commissioner argues that the ALJ properly evaluated the Plaintiff's P.A.'s opinion under the pertinent regulations, and explained why she found it unpersuasive through her discussion of the evidence. (Id. at 9-11) The Commissioner also points out that, as the Plaintiff concedes, there was conflicting evidence in the record, which is a consideration only for the ALJ to reconcile, and she did, finding the Plaintiff was not as limited as his P.A. opined. (Id. at 11-12) As to the P.A.'s opinion that the Plaintiff needed to change positions at will, the ALJ appropriately found such a limitation was not supported by the record; the ALJ did not cherry-pick facts to support a finding of non-disability, but acknowledged throughout her decision factors that supported the light RFC assessment. (Id. at 12-13) The ALJ's light RFC assessment is also supported by the state agency medical consultants, also, the Commissioner notes that the Plaintiff does not challenge the fact that the ALJ identified even three jobs at the sedentary level that he could perform, thus his claim must fail. (Id. at 13-14) The Commissioner asserts that substantial evidence supports the ALJ's determination. (Id. at 14) The Commissioner also contends that the ALJ obviously considered the Plaintiff's work history, and courts within this Circuit do not recognize an "enhanced credibility doctrine" based on a claimant's work history. (Id. at 14-15) Based on the record, the Commissioner contends that substantial evidence supports the ALJ's decision and asks this Court to affirm. (Id. at 16)

**The Relevant Evidence of Record**[1]

Treatment Records:

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings – the Plaintiff's physical impairments and resulting limiting effects.

As a new patient with P.A. Mellert at Thomas Memorial Hospital Division St. Primary Care, in August 2019, the Plaintiff reported a history of intermittent low back pain, with associated numbness in his left thigh (Tr. at 355). On examination, he had a normal gait and was able to stand without difficulty, and sensation was intact to light touch in his extremities (Tr. at 358). His diagnoses included low back pain and radiculopathy (Tr. at 358-359).

On September 30, 2019, an MRI of the Plaintiff's lumbar spine indicated congenitally borderline pedicles with enlargement of posterior epidural fat, as well as degenerative changes, contributing to severe central canal stenosis at multiple levels (Tr. at 365-366). X-rays of the Plaintiff's lumbar spine dated November 19, 2020 indicated multilevel degenerative changes, most pronounced L4-S1; x-rays of his right knee indicated mild osteoarthritis (Tr. at 450-451).

Jimmy R. Adkins, II, P.A., performed a consultative examination on November 19, 2020 (Tr. at 444-451). The Plaintiff reported a history of low back pain, arthritic joint pain, hearing loss, sleep apnea, and numbness in his legs (Tr. at 444-445). The Plaintiff described a twenty-plus year history of back pain associated with a motor vehicle accident with gradually intensifying pain that had become constant and radiated into his left leg with associated numbness, tingling, and weakness; he described joint pain symptoms in his right knee as well as constant joint stiffness and swelling; and he described bilateral hearing loss since 2011 (Id.). On examination, he displayed a normal gait and did not require any assistive device; he had 1+ edema noted bilaterally; there was evidence of cervical paravertebral muscle spasm; straight leg raising was positive on the left; left hip joint tenderness was appreciated; muscle strength was diminished in the left lower extremity, and the Plaintiff was noted to have give-away weakness; he was able to stand on one leg, walk on heels, and walk on toes, although he reported left leg pain symptoms while walking

on heels and toes; he was able to squat, but complained of pain symptoms in the right knee; he was able to perform tandem gait without difficulty; and range of motion was diminished in his cervical spine, shoulders, wrists, dorsolumbar spine, hips, and knees (Tr. at 446-447). The Plaintiff was diagnosed with chronic lumbar spine strain, radiculopathy, arthralgia, tinnitus, hypertension, and obstructive sleep apnea (Tr. at 447-448).

The Plaintiff started physical therapy on June 7, 2021 at Advanced Physical Therapy for treatment of his low back pain and left side sciatica. (Tr. at 478-482) He attended eight sessions, but "demonstrate[d] limited progress with therapy in terms of pain reduction." (Tr. at 484)

On June 17, 2021, the Plaintiff was referred to the Spine and Nerve Clinic for complaints of low back pain and left leg pain with associated numbness and tingling in the left lower extremity, despite physical therapy and injections (Tr. at 467-448). On examination, there was pain with thoraco-lumbar range of motion, paraspinal muscle tenderness, tenderness in the lumbar spine, limited range of motion in the thoraco-lumbar area, and thoraco-lumbar spasm (Tr. at 469). The Plaintiff was diagnosed with low back pain, lumbar spinal stenosis with neurogenic claudication, lumbar radiculopathy, and chronic pain syndrome (Tr. at 471). No lumbar spinal tenderness was observed when the Plaintiff followed up with his primary care provider in March 2022 (Tr. at 507).

On December 14, 2021, x-rays of the Plaintiff's feet showed bilateral degenerative osteophytosis, calcaneal spurs, and calcaneal enthesopathy (Tr. at 495).

Medical Opinions:

On January 18, 2021, the Plaintiff's treating provider, Ashley E. Mellert, PA-C, completed a "Medical Source Statement/Opinion-Physical" on his behalf. (Tr. at 452-457) She indicated that the Plaintiff was a new patient since August 2019, and had five office visits. (Tr. at 452) She noted

10

that the Plaintiff had no relief from medications or injections for his pain. (Id.) She determined that the Plaintiff "can only perform jobs with moderate work stress if limited bending, twisting, and frequent position changes possible"; sit for ten minutes at one time; stand for fifteen minutes at one time; and could sit, stand/walk less than two hours in an eight-hour workday including normal breaks. (Tr. at 454) Ms. Mellert opined that the Plaintiff would need periods of walking around as well, for one to five minutes in duration, and in excess of seven times throughout an eight-hour workday. (Tr. at 454-455) She also opined that the Plaintiff needs a job that allows shifting positions at will from sitting, standing or walking. (Tr. at 455) She further noted that the Plaintiff would need to take three to four unscheduled breaks throughout the workday, lasting one to five minutes. (Id.) Ms. Mellert opined the Plaintiff did not need to elevate his leg(s) or require an assistive device; he could only occasionally lift/carry less than ten pounds; frequently look down, turn his head right or left, look up and hold his head in a static position; but never crouch/squat, rarely twist, and occasionally stoop and climb ladders and stairs; he had no significant limitations with reaching, handling or fingering. (Tr. at 455-456) Ms. Mellert estimated that the Plaintiff would be absent from work as a result of his impairments more than four days per month; she indicated that the Plaintiff is incapable of working a full-time work schedule, and has been since March 1, 2020. (Tr. at 457)

State agency medical examiner Palle Reddy, M.D., reviewed the record on December 3, 2020, and the opined that the Plaintiff could perform light exertion with no climbing of ladders, ropes, or scaffolds; he could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; he must avoid concentrated exposure to extreme cold, extreme heat, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards (Tr. at 74-77, 92-95). This opinion was affirmed

by state agency expert Rabah Boukhemis, M.D., who reviewed the record on reconsideration on March 18, 2021 (Tr. at 109, 116).

**The Administrative Hearing**

The Plaintiff's Testimony:

The Plaintiff testified that he experiences low back pain, lower extremity pain, and right upper extremity pain (Tr. at 48). He described a history of low back pain that radiates into his left leg (Tr. at 49). He testified that his leg has given out and caused him to fall multiple times; on a more recent fall, he injured his right elbow, requiring surgery (Tr. at 49). He said he uses a cane, made by a local craftsman, for assistance when walking (Tr. at 49-50). He described joint pain in his knees, feet, and toes (Tr. at 53-54). He testified that injections helped for "like, a day," and then his pain got worse (Tr. at 54).

The Vocational Expert's ("VE") Testimony:

In response to the ALJ's hypothetical question based upon the controlling RFC, supra, the VE identified three jobs the hypothetical individual with the Plaintiff's background could still perform: hand bander; small product assembler; and cleaner of engraver (Tr. at 57-58). Based upon the same hypothetical, but restricted to sedentary level, the VE identified three additional jobs the individual could still perform: addresser; final assembler; and table worker (Tr. at 59).

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claims is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular
> conclusion. It consists of more than a mere scintilla of evidence but may be
> somewhat less than a preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d

640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence, however, the Court determines if the final decision of the Commissioner

is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th

Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape

their duty to scrutinize the record as a whole to determine whether the conclusions reached are

rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists,

the Court must affirm the Commissioner's decision "even should the court disagree with such

decision." Blalock, 483 F.2d at 775.

**Analysis**

Evaluation of Medical Opinion Evidence:

The Plaintiff alleges that the light RFC assessment is erroneous due in large part to the

ALJ's treatment of Ms. Mellert's opinion. (ECF No. 8 at 3-12) To the extent that the Plaintiff

argues that the ALJ failed to properly evaluate the opinion evidence of record, the undersigned

notes that the ALJ explicitly applied the regulatory framework pursuant to Sections 404.1520c and

416.920c to claims filed after March 27, 2017. (Tr. at 30, 33) Additionally, it is known that the

RFC assessment lies squarely with the ALJ, not with any medical provider/examiner. 20 C.F.R.

§§ 404.1546(c), 416.946(c); see Felton-Miller v. Astrue, 459 Fed.Appx. 226, 230-231 (4th Cir.

2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). The

applicable regulations provide that a medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activity or adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). The Regulations also define "findings . . . about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review" as "prior administrative medical finding[s]." Id. at §§ 404.1513(a)(5), 416.913(a)(5).

In this case, the ALJ properly applied Sections 404.1520c and 416.920c, which emphasize the supportability and consistency factors when assessing the persuasiveness of the medical opinions of record; moreover, an adjudicator is not bound to give any specific weight or deference to any medical provider's opinion, including those provided by treating sources. Id. §§ 404.1520c(a), 416.920c(a). Instead of assigning weight to medical opinions, the ALJ now just considers the persuasiveness of a medical opinion (or a prior administrative medical finding). Id. Critically, the source of the opinion is not the most important factor in evaluating its persuasive value, instead, the most important factors are supportability and consistency. Id. §§ 404.1520c(b)(2), 416.920c(b)(2). When discussing the finding about whether an opinion is persuasive, the ALJ need only explain how she considered the "the most important factors" of supportability and consistency. Id. §§ 404.1520c(c), 416.920c(c). The ALJ "may" comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. Id. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

14

Following her review of the state agency medical consultants[2], the ALJ discussed Ms. Mellert's physical assessment form, noting her opinion as it relates to the Plaintiff's lifting/carrying, sitting, standing, and walking abilities, plus his need for unscheduled breaks throughout the workday, and postural limitations, described above, as well as her opinion that he "must be allowed to shift positions at will from sitting, standing or walking" (Tr. at 33-34, 452-457). The ALJ then determined that she found "the opinion of this treating provider not persuasive. This treating source examined the claimant five times between August 2019 and January 2021, and the progress notes contain no objective findings to support such significant limitations." (Tr. at 34)

While the Plaintiff complains the ALJ failed to explain why she found this opinion unpersuasive, as noted *supra*, Sections 404.1520c(a) and 416.920c(a) do not mandate that an adjudicator must evaluate a medical opinion at all. Regardless, in the written decision, it is evident that the ALJ "considered" this opinion pursuant to the pertinent regulations, as she refers to Ms. Mellert's "progress note" from Thomas Memorial Hospital's Primary Care division dated August 14, 2019: significantly, on that day, the ALJ noted the Plaintiff "displayed normal gait and was able to stand without difficulty" and "sensation was intact to light touch in his extremities." (Tr. at 31, 354-360)[3] The undersigned observes that the record of evidence from this provider is sparse.[4]

---

[2] The ALJ found these opinions persuasive, as they are supported by their review of the record, and the ALJ found the light RFC determinations most consistent with the "totality of the current record." (Tr. at 33)

[3] It is also significant that Ms. Mellert's note indicates that the Plaintiff did not have balance problems over the past twelve months and was steady when walking and climbing stairs, and was stable when rising from a sitting position. (Tr. at 358)

[4] As noted by the Commissioner, the record contains no treatment notes from this provider or the Thomas Memorial Hospital from January 1, 2020 through October 1, 2020. (ECF No. 9 at 11, fn4) Additionally, as the Commissioner

Another treatment record the ALJ considered from the Plaintiff's primary care provider, Paul T. Kuryla, M.D., with Thomas Memorial Hospital's Primary Care division, is a note dated March 24, 2022, who found "[n]o lumbar spinal tenderness was present[.]" (Tr. at 32, 503-509)[5]

The ALJ also compared this evidence with the other (fairly sparse) medical evidence of record from the relevant period, including the consultative examination from November 19, 2020 performed by Jimmy R. Adkins, II, P.A. (Tr. at 32, 444-451) Of significance here, the ALJ noted that Mr. Adkins observed the Plaintiff "displayed a normal gait and did not require any assistive device", although she also noted that "there was evidence of cervical paravertebral muscle spasm; straight leg raising was positive on the left; left hip joint tenderness was appreciated; muscle strength was diminished in the left lower extremity and the claimant was noted to have give-away weakness." (Id.) Further, the ALJ noted that the examiner observed that the Plaintiff was capable of standing on one leg, walk on his heels, and walk on his toes, though the Plaintiff did report having left leg pain with walking on heels and toes. (Id.) Though the Plaintiff could squat, the ALJ noted he complained of pain in his right knee; he could also perform tandem gait "without difficulty", though his range of motion was diminished in the cervical spine, shoulders, wrists, dorsolumbar spine, hips, and knees. (Id.)

The ALJ noted that the Plaintiff was referred to the Spine and Nerve Clinic on June 17, 2021 for his low back and left leg pain symptoms with associated numbness and tingling in his left leg, despite physical therapy and injections. (Tr. at 32, 466-471, 472-490) The ALJ acknowledged

---

has also pointed out, the record does not contain any other evidence of the other four underlying office visits Ms. Mellert refers to in her opinion. (Id.) The undersigned further observes that the medical evidence of record from this provider(s) consists of 14 pages total.

[5] Dr. Kuryla also noted that the Plaintiff had "normal" ambulation, despite a history of falls. (Tr. at 509)

that upon examination, it revealed that the Plaintiff had pain, tenderness, spasm, and limited range of motion in the thoraco-lumbar area. (Tr. at 32, 466-471) The ALJ also considered the imaging studies concerning the Plaintiff's lower back and feet from before his alleged onset date and afterwards, described *supra*. (Tr. at 26-27, 33)

In addition, the ALJ considered the Plaintiff's testimony regarding his pain symptoms in his lower back and lower extremities, and how his back pain radiates into his left leg, and that it has given out on him, causing him to fall on multiple occasions. (Tr. at 30) She acknowledged that the Plaintiff also testified to having joint pain in his knees, feet and toes, and that he uses a cane for assistance when walking. (Tr. at 31)

The foregoing demonstrates that the ALJ did not engage in impermissible cherry-picking[6] when evaluating the evidence in assessing the Plaintiff's RFC – she acknowledged both negative and positive findings, reconciled the conflicting evidence of record, and ultimately restricted the Plaintiff to a light RFC (which included sedentary positions that the Plaintiff could still perform). To the extent the Plaintiff argues the ALJ should have referenced the MRI findings or other medical evidence to further explain why she found Ms. Mellert's opinion not persuasive, it must be emphasized that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." See Manigo v. Colvin, 2015 WL 74954, at *5 (D. S.C. Jan. 6, 2015) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the

---

[6] See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (" 'An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.' " (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)).

record and explanation of the findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's opinion is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." Id. Indeed, it is also important that an ALJ's decision must be read as a whole in order to discern whether substantial evidence supports a finding.  See Keene v. Berryhill, 732 Fed.App'x 174, 177 (4th Cir. 2018) (finding the court "must read the ALJ's decision as a whole" and that findings in a step can support findings in other steps of the analysis).

Moreover, this Circuit has recognized that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)); see also Call v. Berryhill, Civil Action No. 2:17-CV-02292, 2018 WL 4659342, *4 (S.D.W. Va. Sept. 28, 2018). In this case, the ALJ stated that she considered all the evidence of record. (See Tr. at 22, 31 ("After careful consideration of all the evidence. . ."); Tr. at 25, 30 ("After careful consideration of the entire record. . ."). Having so stated, this Court should "take her at her word." Reid, 769 F.3d at 865 ("The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word."); see also Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."); Christina W. v. Saul, No. 4:19-cv-00028-PK, 2019 WL 6344269, *4 (D. Utah Nov. 27, 2019)("Plaintiff further argues that the ALJ erred in not explicitly discussing various pieces of evidence, particularly the fact that she is participating in a

structured treatment program. While the ALJ must consider all the evidence, she need not recite each piece of evidence she has considered. The ALJ stated that she carefully considered the entire record and the Court can take her at her word."); see also, Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2020).

In this case, the ALJ complied with the pertinent regulations and provided an adequate explanation for her evaluation of Ms. Mellert's opinion evidence. To the extent that the P.A.'s opinion was not corroborated by the evidence of record, the ALJ was under no obligation to include those restrictions in the hypothetical to the vocational expert. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (concluding that an ALJ's hypothetical question need only include those impairments supported by the record); Koonce v. Apfel, No. 98-1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (unpublished table opinion) (stating that an ALJ has "great latitude in posing hypothetical questions" and need only include limitations supported by substantial evidence in the record).

Accordingly, the undersigned **FINDS** the ALJ's evaluation of the medical opinion provided by Ms. Mellert is supported by substantial evidence, and further **FINDS** the ALJ crafted an RFC assessment that is also supported by substantial evidence.

Work History under SSR 16-3p:

The Plaintiff's other challenge to the ALJ's decision is that she failed to consider his work history in her "credibility" assessment.[7] 20 C.F.R. §§ 404.1529, 416.929 requires a finding of the

---

[7] Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p and therefore governed the ALJ's decision herein. See, SSR 16-3p, 2016 WL 1131509. The new Ruling eliminates the use of the term "credibility" from SSA policy because the Regulations do not use that term: "we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." See, 2016 WL 1119029, at *1. The Plaintiff appears to acknowledge the use of the term "credibility" is no longer

extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

SSR 16-3p further directs adjudicators to use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment ("MDI") that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities. See, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and

---

appropriate when analyzing a claimant's subjective complaints, but still relies on the notion that his lengthy work history supports his "credibility." (ECF No. 8 at 12, fn9)

other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Id. §§ 404.1529(c)(3), 416.929(c)(3).

To the extent that the Plaintiff alleges the ALJ failed to consider his work history, the undersigned **FINDS** this allegation lacks merit: the ALJ explicitly discussed the Plaintiff's earnings record that showed he has acquired sufficient quarters of coverage to remain insured through December 31, 2025 (Tr. at 22, 25). Moreover, the ALJ noted that the Plaintiff even continued to work after his alleged onset date, but that work activity did not rise to substantial gainful activity levels – significantly, after discussing his collection of employment benefits in the first, second and third quarters of 2020, as well as in the fourth quarter of 2021, she observed this "indicates a readiness, willingness, and ability to work." (Tr. at 25) Indeed, the ALJ found the Plaintiff was not capable of performing his past relevant work ("PRW") at step four of the sequential evaluation process. (Tr. at 34) In any event, the ALJ clearly performed the two-step

21

process, and ultimately found the Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical and other evidence of record – notwithstanding the Plaintiff's work history. (Tr. at 30-34)

In sum, the undersigned **FINDS** the final decision denying the Plaintiff's application for benefits is supported by substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's request for remand (ECF No. 8), **GRANT** the Defendant's request to affirm the decision below (ECF No. 9), **AFFIRM** the final decision of the Defendant, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: August 17, 2023.



Omar J. Aboulhosn
United States Magistrate Judge